FILED & JUDGMENT ENTERED
David E. Weich

Dec 18 2009

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**WILKESBORO DIVISION**

IN RE:                                    )
                                          )    Case No. 09-50401
**Wynne Residential**                     )        Chapter 7
**Asset Management, LLC**, et al          )
    Debtor.                               )
_____)

**ORDER**

THIS MATTER is before the Court on the Chapter 7 Debtor's Application and Amended Application for Compensation to Young, Morphis, Bach & Taylor, LLP ("the law firm") and Jimmy R. Summerlin, Jr. ("Summerlin") (collectively "Applicants") for fees and expenses incurred while representing the Debtor in Possession ("DIP"), Wynne Residential Asset Management ("Wynne"), during the Chapter 11 phase of this bankruptcy case.

Applicants seek approval of their attorneys' fees totaling $15,487.50 and recovery of $292.11 in out of pocket expenses. Of the sums allowed, Applicants seek to be paid $4,961.00 from the balance of their pre-petition retainer, plus a Chapter 11 priority administrative expense claim for the remaining balance.

1

The Bankruptcy Administrator objects to both applications, arguing that Applicants are not "disinterested persons" as defined by 11 U.S.C. § 101(14) and as required by 11 U.S.C. § 327. The Bankruptcy Administrator points out several conflicts of interest between the estate and the law firm's other clients. Given these entanglements, she believes Applicants should be denied all compensation in the case.

A hearing was held on November 9, 2009. The Applicants were represented by Summerlin. The Bankruptcy Administrator represented herself.

**Issues Presented**

The operant facts are not in dispute, but they present two legal questions that must be decided. First, do Applicants meet the requirements of § 327 of neither holding, nor representing, "interests adverse to the estate" and of being "disinterested persons?"

Second, if not, were the § 327 requirements excused by Applicants' obtaining conflict waivers from the parties in question?

**Holding**

Upon the facts presented, Applicants do not, and did not at the petition date, meet the requirements of 11 U.S.C. § 327. Rather, in addition to Wynne, Applicants represented and/or continued to represent, a variety of insiders, including Wynne's principal, (manager, owner, contingent creditor), related entities who owed money to or were owed money by Wynne, and/or who themselves were owned by J. Michael Henderson ("Henderson").

The after the fact waivers of these conflicts of interest by some of the related parties, were likely ineffective under North Carolina Revised Rule of Professional Conduct, Rule 1.7(b)(4). However, even if effective, they do not excuse counsel from

complying with the requirements of § 327, governing retention of counsel for the estate.

**Findings of Fact & Prior Proceedings**

Wynne filed a voluntary Chapter 11 case in this Court on March 27, 2009.  Its Petition was accompanied by an Ex Parte Application to Employ Attorney.  Here, Wynne sought appointment of Applicants as counsel for the DIP in the case.  As required by §327 and Bankruptcy Rule 2014, the law firm's application was supported by an affidavit describing any preexisting relationships with the DIP and other case parties. In that affidavit counsel avers "to the best of debtor's knowledge, said Young, Morphis, Bach & Taylor, LLP has no connection with the creditors or any other party in interest or their respective attorneys." (Doc. N. 2, Ex Parte Application with Affidavit to Employ Attorney, Par. 6.)

On its face, the Application was proper, and consistent with this Court's local rules;[1] the same was granted without notice or hearing.

Wynne was one of several companies owned by Henderson.   Wynne was a holding company whose primary asset was a Statesville, North Carolina golf course.  Another Henderson entity, River Oaks Golf Course Management, LLC ("River Oaks Golf"), operated the course.

This case was filed to stop a foreclosure of the golf course by secured creditor, Bank of Granite ("BOG").  Wynne hoped to use the Chapter 11 period to secure a buyer for the course.

Unfortunately, a lack of cash flow and a meltdown in the national real estate market

---

[1] Bankruptcy Rule 2014 does not mandate notice or hearing prior to entry and local practice permits such applications to be considered on an ex parte basis.

3

made these efforts unsuccessful.  Early in the case, BOG objected to Wynne's use of its cash collateral (the course rents).  By April 2009, BOG was seeking relief from stay in order to complete its foreclosure.

Wynne's defensive position was weak, leading it to agree to a "drop dead" order with BOG. The consent order stipulated that should Wynne fail to make any monthly interest payments to BOG, the lender would be permitted to resume foreclosure.  Wynne quickly failed to tender these payments.  BOG received relief from stay on June 2, 2009. The lender completed its foreclosure and became the owner of the golf course on July 15, 2009.  Wynne then lost its other "hard" assets (leased golf carts and course equipment) to repossession by a lessor in August 2009.

In the wake of these reversals, Wynne moved to dismiss its case. (Doc. N. 43, Motion to Dismiss Bankruptcy Case.)   BOG objected. The Bankruptcy Administrator offered an alternative to dismissal, moving on August 11, 2009 to convert the case to Chapter 7. (Doc. N. 45, Motion to Convert Case from Chapter 11 to Chapter 7.)  Her motion was based both on the futility of reorganization and Wynne's failure to timely file reports and pay quarterly fees in the case. Id.

The Bankruptcy Administrator's motion sparked several responsive acts by Wynne. Wynne countered her conversion proposal with a suggestion that the Debtor (rather than a Chapter 7 trustee) should liquidate its remaining assets, in Chapter 11. (Doc. N.67, Motion to Sell Property under Sec. 363(b).)  Months of missing status reports were filed and unpaid quarterly fees tendered.  (*See* Doc. Nos. 55-60, 62 &65.)

Applicants also took an unusual step. They filed a second Ex Parte Application to be Employed, supported by a new affidavit.  (Doc. N. 49, Ex Parte Application with

4

Affidavit to Employ Attorney.)

The new application is explained as follows: In the "haste of preparing and filing the petition prior to the expiration of the upset bidding period…proposed counsel mistakenly and inadvertently failed to disclose…" relationships between the law firm, Wynne and other parties. (Doc. N. 49, Ex Parte Application with Affidavit to Employ Attorney, Par. 3.)

Eight previously undisclosed relationships between the parties are then described:

    a.    The sole member and manager of the Debtor is J. Michael Henderson. The Firm has provided and continues to provide representation of Mr. Henderson in regards to a variety of matters. Mr. Henderson is a co-debtor with the Debtor on several of its debts.

    b.    One of the Debtor's assets is indebtedness for lease payments booked from River Oaks Golf Course Management, LLC ("River Oaks Golf"), an entity organized and existing solely for the purpose of operating the Debtor's real property. The Debtor and River Oaks Golf are owned by the same individual, J. Michael Henderson. Counsel for the Debtor represented J. Michael Henderson in the formation of River Oaks Golf in 2006, but has not provided representation to River Oaks Gold since that time. An attorney for the Firm is presently listed as registered agent for River Oaks Gold. The Debtor has previously provided and reviewed the income and expenses of River Oaks Golf with Mr. John Bramlett, the previous Bankruptcy Administrator, and with representatives of Bank of Granite, the Debtor's primary secured lender.

    c.    Another of the Debtor's assets is indebtedness owed by River Oaks Landings Development, LLC ("River Oaks Landings"), another single asset entity co-owned by Mr. Henderson. Counsel for the Debtor has represented River Oaks Landings in the recent past, but River Oaks Landings is presently represented by Mr. Richard Mitchell in a Chapter 11 proceeding before this Court. Based upon the knowledge of the debts and assets of River Oaks Landings at the time of filing the Debtor's Petition, the Debtor and its counsel understood the indebtedness owed by River Oaks Landings to be uncollectible. By virtue of its Chapter 11 filing the income and expenses of River Oaks Landings are available for review by the Bankruptcy Administrator.

    d.    One of the Debtor's creditors is Ideal, LLC ("Ideal"), another entity owned by Mr. Henderson. Ideal is the owner of certain lots around the River Oaks Golf Course and holds those lots for future development. Counsel for the Debtor has represented Ideal in the recent past, but Ideal is presently represented by Mr.

5

>    Richard Mitchell in a Chapter 11 proceeding before this Court.  Mr. Henderson understands that the indebtedness owed to Ideal by the Debtor would not be repaid unless and until all other claims were paid in full.  By virtue of its Chapter 11 filing, the income and expenses of Ideal are available for review by the Bankruptcy Administrator.
>
> e.    Another of the Debtor's creditors is The Wynne Guild, Inc. ("Wynne Guild"), another entity owned by Mr. Henderson. Mr. Henderson is also an officer of the Wynne Guild, a Virginia corporation owned by Mr. Henderson and/or his spouse and/or The J. Michael Henderson Revocable Trust, and the Wynne Guild has funded the Debtor's operations over some time. Counsel for the Debtor has not represented Wynne Guild. Mr. Henderson understands that the indebtedness owed to Wynne Guild by the Debtor would not be repaid unless and until all other claims were paid in full.

(Doc. N. 49, Ex Parte Application with Affidavit to Employ Attorney, Par. 3.)

Henderson also signed this new application purporting to waive the aforementioned conflicts for himself and the entities River Oaks Golf, River Oaks Landings, and Ideal, LLC. Henderson did not purport to waive on behalf of Wynne.

The new application was served on only a few parties and without an accompanying notice of hearing.  A proposed order was immediately submitted to the Court and improvidently [2] entered.  (Doc. N. 53, Order Granting Amended Application to Employ Attorney.) The order was not served on creditors.

A week later, and with the other motions still pending, Applicants filed their first Application for Compensation in the case.  (*See* Doc. N. 61, Application for Compensation.)   Now aware of the law firm's representations of these other parties, the Bankruptcy Administrator objected.

The case was converted to Chapter 7 on September 16, 2009, and a Trustee replaced the DIP to administer Wynne's remaining assets.

---

[2] Given these entanglements an objection period or a hearing should have been noticed by counsel, and in its absence, set by the Court.  However, the amendment order slipped past the Court's vetting procedures.  While embarrassing, that fact is not determinative.  Having been entered without an objection opportunity, the order is not binding on other parties.

6

Applicants amended their Application for Compensation on October 13, 2009, and once again the Bankruptcy Administrator objected citing these newly discovered conflicts of interest. (Doc. N. 82, Amended Application for Compensation; Doc. N. 83, Response Objection to Amended Application for Compensation.) That fee application as amended is now before this Court.

## Discussion

While acting as a DIP under Chapter 11, Wynne was charged with the duties of a trustee. *See* 11 U.S.C. §1107. Further, as a DIP, Wynne was a fiduciary for obligations to its creditors to maximize the estate. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352(1985). These fiduciary responsibilities extended to Wynne's professionals, including its attorneys. In re Envirodyne Indus., 150 B.R. 1008, 1016 (Bankr. N.D. Il. 1993).

The Bankruptcy Code carefully scrutinizes the relationships between professionals to be employed by the DIP/trustee and third parties. Section 327 provides that a trustee [here, the DIP] may employ one or more attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. §327(a).

The statute's dual requirements of disinterestedness and no adverse interests ensure that counsel is not, directly or indirectly, acting at the direction or influence of any other party. In re Envirodyne Indus., 150 B.R. at 1017 *citing* Collier on Bankruptcy, ¶ 327.03, 327-22 (L. King ed. 1985).

We now know that Applicants and Wynn had several conflicting relationships with other case parties that violate these requirements:

7

1) **Wynn's sole member/manager, Henderson, was and continues to be represented by the Applicants in a variety of legal matters.** Simultaneous representation of a DIP and its owner(s) or its management is not permitted in Chapter 11. *See generally,* In re Temp-Way Corp., 95 B.R. 343 (E.D. Pa. 1989); In re Johore Inv. Co., 49 B.R. 710 (Bankr. D. Haw. 1985); In re Envirodyne Indus., 150 B.R. 1008.

   That conflict of interest is made worse by the fact that Henderson is a co-debtor (by guaranty) with the Debtor on certain debts, including the BOG mortgage. (Doc. N. 1, Voluntary Petition Under Chapter 11, Schedule H; Doc. N. 49, Ex Parte Application with Affidavit to Employ Attorney, Par. 3.) As a guarantor, Henderson was a contingent creditor of Wynne's with an incentive to insure that it was Wynne and not he, who paid this debt.[3]

   The law firm should not have continued to represent Henderson while representing the DIP with any of these three relationships.

2) **One of the Debtor's few remaining assets is an intercompany debt owed by River Oaks Landings scheduled in the amount of $84,259.25.** (Doc. N. 20, Declaration, Statement of Financial Affairs, Official Form G, Schedule B, Pg. 2.) As noted, River Oaks is another entity co-owned by Henderson. (Doc. N. 49, Ex Parte Application with Affidavit to Employ Attorney, Par. 3.)

   The same conflicts that would prevent Applicants from representing Henderson, also bar their representation of his other companies.

---

[3] Under § 327 (c) representation of a creditor is not per se disqualifying if (a) the conflict is disclosed; (b) no creditor or United States Trustee [here the Bankruptcy Administrator] objects; and (c) the conflict was potential, not actual. This limited exception was not met in this case for several reasons discussed in this order.

8

However, and significantly, River Oaks Landings owes Wynne money. This is a clear adverse interest to this bankruptcy estate.

3) **An attorney employed by Applicants also serves as registered agent for River Oaks Landings.** Again, the firm is representing, albeit in a limited fashion, a party with an adverse interest to Wynne and its creditors.

4) **According to the new Application, two other Henderson entities[4] Wynne Guild and the J. Michael Henderson Trust have funded Wynne's operations for a substantial, but undisclosed, period of time.**[5] The law firm avers that it did not represent these entities, but it did (and does) represent Henderson. Accordingly, this relationship is also disqualifying.

5) **The Application as amended discloses Applicants' representation of several Henderson entities before bankruptcy.** These legal relationships, may or may not have been disqualifying. However, like the other relationships, they should have been disclosed at the outset of the case.

Given these entanglements, Summerlin and the law firm were not disinterested persons at the time the bankruptcy case was filed. Further, either in the past and or presently, they represented parties with interests adverse to the bankruptcy estate. Because they could not meet the requirements of § 327, Applicants should not have undertaken the representation of Wynne in its Chapter 11 case.

Applicants attempt to defend their actions by suggesting these entanglements were merely potential conflicts of interest disclosed to, and waived by, their clients. In effect, Applicants are suggesting that they complied with Rule 1.7(b)(4) of the North

---

[4] Henderson is also an officer of Wynne Guild.
[5] If this funding was given during the bankruptcy period, it was not authorized by to the Court. There were no financing motions filed in this case by Wynne.

9

Carolina State Bar's Revised Rules of Professional Conduct, thereby resolving the conflicts problem. This Court cannot agree.

The only indication of a waiver by the other clients, etc. is Henderson's signature on the second Application to employ.  If this is the waiver to which Applicants allude, then it was obtained only in August 18, 2009, after the representation was effectively over and after the fees and expenses incurred. (Doc. N. 49, Ex Parte Application to Employ Attorney.) Revised Rule of Professional Responsibility Rule 1.7(b)(4) contemplates disclosure and waiver in advance of the representation, not afterward. It is unlikely that a retroactive waiver would be effective under the rule, even if all of the affected parties consented.

Of course, they did not. Notably, neither Wynne as DIP nor its outside creditors consented. Indeed, the latter were not even informed.

However, this is besides the point. The disclosure and waiver rule on which Applicants rely is a state procedure generally applicable to North Carolina attorneys and the clients they represent.  As worthy and useful as that rule may be, the state procedure does not supplant 11 U.S.C. § 327 in a bankruptcy case. Because of a Trustee or DIP's fiduciary responsibilities, the federal statute imposes seperate requirements on attorneys seeking to represent the bankruptcy estate.  These standards are waivable if at all only with prior written notice to all parties in interest and with approval of the bankruptcy court.

The case law in this area is very clear. A professional serving a bankruptcy estate who is found during the case to hold conflicts of interest violative of § 327 is entitled to no compensation for his work. *See, e.g.,* In re Kolortex, No. 506 Case no. 95-30796, pg.

10

11; Hansen, Jones & Leta, P.C. v. Segal, 220 B.R. 434 (D. Utah 1998); In re Gulf Coast Orthopedic Ctr., 265 B.R. 318 (Bankr. M.D. Fla. 2001); In re eToys, Inc., 331 B.R. 176, 193 (Bankr. D. Del. 2005) (disgorging of fees counsel earned on matters which the same had conflicts and failed to disclose actual conflicts).

As the Bankruptcy Administrator suggests, Applicants could be denied all compensation and reimbursement of their expenses in the present instance. However, on the facts as presented, denial of all compensation to Applicants may be a punishment disproportionate to the offense.

This appears to be a case of counsel not fully appreciating the requirements imposed on their law firm by the Bankruptcy Code and of assuming that compliance with the Bar rule was sufficient. It does not appear to be a case of attorneys attempting to thwart the federal requirements by nondisclosure and concealment.

Wynne's primary bankruptcy attorney, Summerlin, is well known to this Court from his work in consumer cases. Summerlin has a reputation with the bench and the bankruptcy bar of honesty and forthrightness. He is, admittedly new to Chapter 11 work and in particular to the representation of DIPs.[6] Further and fortunately, Wynne is a real estate holding company without employees or operations. This minimizes the potential prejudice to the bankruptcy estate occasioned by these conflicts. While not required to support a fee denial, no actual prejudice to the estate appears to have occurred.[7] Even so a word of caution is in order. If the Applicants were not sure of what was expected of

---

[6] The duties of debtors and individual creditors in Chapter 7 and 13 cases, while significant in their own way, do not include the fiduciary responsibilities imposed on Trustees and Chapter 11 DIP's by Section 327 and other Code provisions.

[7] The River Oaks Landing receivable and whether Wynne should have attempted to collect this sum during Chapter 11 is an open question not addressed at hearing. However, it is likely that the receivable was uncollectible even then given that River Oaks Landing filed bankruptcy in this court on July 27, 2009. (Case no. 09-51073.)

11

them, they should have researched the requirements of serving as DIP counsel before undertaking the relationship. Erring on the side of overdisclosure would also have been appropriate. The Court fully expects the firm to learn from this situation, such that the problem does not arise again.

The Court elects to allow Applicant's all of their expenses or $292.11, with this sum to be drawn down from the firm's security retainer. However, due to Applicants' failure to comply with § 327 or to disclose the disqualifying relationships, the Court will allow only 50% of Applicants' attorney's fee request. The sum of $7,743.75 shall be allowed as fees, with $2,998.50 of this being drawn from the firm's retainer. The allowed balance of the award, or $4,745.25 will be allowed as a Chapter 11 administrative expense. The remainder of the application as amended is denied.

**SO ORDERED.**

| | |
|---|---|
| **This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.** | **United States Bankruptcy Court** |